[L. A. No. 16020. In Bank.—March 26, 1937.]

SALLY E. SAWYER et al., Respondents, v. SUNSET MUTUAL LIFE INSURANCE COMPANY (a Corporation), Appellant.

Sylvan Y. Allen and Allen & Hedberg for Appellant.

De Forrest Home, Eugene Kelly and Lon A. Brooks for Respondents.

CURTIS, J.—A hearing was granted in this case after decision by the District Court of Appeal, Second Appellate District, Division One, to consider more fully the contention of the respondents that the modification by the District Court of Appeal of the judgment of the trial court in favor of respondents by reducing said judgment from $3,032 to $903 was erroneous. We are satisfied that the contention of the respondents is correct and the judgment as rendered by the trial court should be affirmed. We are, however, in accord with the statement of the case by Mr. Justice White, *Pro Tempore,* in the opinion prepared by him, and are satisfied with the conclusions reached therein that under the facts therein set forth the respondents were entitled to recover against the appellant, and we, therefore, adopt that portion of the opinion affirming said right of respondents, as part of the opinion of this court. It is as follows:

"Appeal by defendant Sunset Mutual Life Insurance Company from a judgment in favor of plaintiffs in the sum of $3,032 and costs.

"Briefly, the facts are that on July 24, 1929, the Roosevelt Mutual Life Insurance Association, a California corporation, insured the life of one Mack Lewis Sawyer for $3,000. Respondents herein were the beneficiaries under this policy. On June 9, 1930, while said policy was in force, the Roosevelt association and appellant Sunset Mutual Life Insurance Company, entered into a certain agreement, under the terms of which appellant insurance company assumed, according to their terms and conditions, the policies and certificates of membership of the Roosevelt company then outstanding, it being further provided that the Roosevelt company would transfer to appellant all defenses contained in the said policies or certificates. This agreement was approved by the insurance commissioner of California on June 26, 1930. Under this agreement the collection of assessments and payment of death losses were consolidated under one management. It was further provided in the contract that when death notices were received by the Roosevelt insurance company, the latter should forthwith submit them to the Sunset insurance company, and that proofs of loss were to be forwarded by the Roosevelt insurance company to the Sunset insurance company for the latter's approval and adjustment, and when the amount to be paid was approved by the Sunset

company the latter was to forward its check to the Roosevelt company for settlement with the beneficiary. Final settlement papers, properly signed, and surrendered policies or membership certificates, properly released, were to be furnished by the Roosevelt company to the Sunset company. Following the execution of the agreement, the two insurance companies moved into the same suit of offices, and the medical examiner for the Sunset company acted in a like capacity for both companies. It also appears that the president of the Sunset company was vice-president of the Roosevelt company. The Roosevelt company forwarded to all its agents and some of its policy holding members a mimeographed copy of a letter signed by the Sunset company, in which it was stated that on and after June 26, 1930, all risks carried by the Roosevelt company were fully covered by the Sunset company. Some $800 was paid by the Roosevelt company to the Sunset company pursuant to the contract.

"On September 29, 1930, and while this agreement between the two insurance companies was in effect, the insured, Mack Lewis Sawyer, died, and proofs of death were submitted to the Roosevelt company, with a claim for payment of the amount due under the policy. On January 7, 1931, the Roosevelt company disallowed the claim of respondents herein as beneficiaries under the policy for payment thereunder.

"On January 31, 1931, the so-called reinsurance agreement was canceled by mutual consent of the Roosevelt and Sunset insurance companies. Shortly thereafter, the respondents herein, as beneficiaries under the policy, brought an action against the Roosevelt company, and on September 23, 1932, secured judgment for $3,000 and costs. This judgment became final and remains wholly unsatisfied. On November 7, 1934, respondents secured an assignment from the Roosevelt insurance company of all the latter's rights to proceed against appellant under the reinsurance agreement; thereafter commencing the present action, which was tried before the court, sitting without a jury, resulting in a judgment in favor of respondents, from which this appeal is prosecuted by the Sunset company.

"Appellant's first attack upon the judgment is founded upon the claim that the so-called contract of reinsurance between appellant and the Roosevelt insurance company invested respondents with no right whatever to proceed

against and compel payment by the appellant reinsurer; and in support of this contention we are cited to section 2646 of the Civil Code, reading, 'A contract of reinsurance is one by which an insurer procures a third person to insure him against loss or liability by reason of such original insurance,' and section 2649 of the Civil Code, which provides, 'The original insured has no interest in a contract of reinsurance.'

"The weight of authority in this state seems to be that if a reinsurer, by its contract of reinsurance, assumes all outstanding policies of the insured, it is liable directly to the beneficiaries. (*Grbavach* v. *Casualty Co. of America*, 40 Cal. App. 376 [180 Pac. 835].) It is argued, however, by appellant that the contract between the companies referred to and their subsequent action in carrying it out amount to nothing more than a naked contract of reinsurance under the code; but we are of the opinion that the facts in this case show the contract in question to be much broader than a mere technical contract of reinsurance. In *Arnold* v. *Lyman*, 17 Mass. 400 [9 Am. Dec. 154], it is said:

" 'The promise being not to Hutchins expressly, but general in its form, the assent of the creditors made them parties to the promise; and this assent is sufficiently proved, as respects the plaintiffs, by their bringing an action upon the contract.'

"See, also, *Morgan* v. *Overman S. M. Co.*, 37 Cal. 534; *Flint* v. *Cadenasso*, 64 Cal. 83 [28 Pac. 62]; *Lockwood* v. *Canfield*, 20 Cal. 126.

"In the so-called contract of reinsurance before us we find the following covenant: 'The Company agrees that the membership of the Association so reinsured shall for the purpose of levying assessments be consolidated with its own assessment department and only such assessments levied as will enable the Company to pay all just claims in full according to the terms of the policies and/or certificates covered under the term of this contract.'

"Again, we find the appellant Sunset insurance company in its contract of reinsurance providing: 'The Company assumes the policies and/or certificates of membership of the Association now outstanding according to their terms and conditions including days of grace and reinstatement and the Association transfers to the Company all defenses contained in policies and the applications therefor.'

"In addition to the foregoing, we find in the contract the following covenant: 'It is agreed that an Assistant Secretary of the Company shall be elected as Assistant Secretary of the Association with authority to install systems and audit the accounts of the Association and make or supervise the making of all quarterly and annual statements to the Insurance Department and that the expense of such Assistant Secretary be paid by the Company.'

"Further in its agreement the Roosevelt Association agreed at its own expense to prepare and mail mortuary assessment calls, and collect and receipt for assessments collected under such notices, but to deposit all such collections in a depositary designated by appellant.

"The contract further provided that the Roosevelt insurance company must submit all notices of death of members forthwith on receipt of same to the appellant insurance company, and forward to beneficiaries blank proofs of loss on forms approved by the appellant; and further, that when proofs of death were received they were to be forwarded to the appellant company for its approval and adjustment.

"The finding of the court that under the terms of the contract between the respective insurance companies appellant assumed all the outstanding policies of the Roosevelt Mutual Life Association, and agreed to adjust, pay and settle all claims arising under said policies, including the policy of insurance sued on herein, is amply supported by the evidence. The holders of policies issued by the Roosevelt Mutual Life Association in this state could avail themselves of said promise and undertaking made for their benefit by the appellant Sunset insurance company; ██ and as was said in *Whitney* v. *American Insurance Co.*, 127 Cal. 464, 470 [59 Pac. 897], the bringing of suit is sufficient evidence of assent on the part of respondents to said agreement and undertaking. Under the facts of this case, we are of the opinion that the law created the privity necessary for the maintenance of the action. The Sunset Mutual Life Insurance Company was jointly liable with the Roosevelt Mutual Life Association on the policy.

██ "Appellant next urges that the cancellation of the so-called reinsurance agreement by mutual consent of the respective insurance companies on January 31, 1931, extinguished, canceled, settled and disposed of all rights which

had accrued under the policy of insurance herein by reason of the death of the insured, whose demise occurred prior to the cancellation agreement. With this contention of appellant we cannot agree. The document by the terms of which the contractual relations existing between the two insurance companies were terminated is denominated 'cancellation of contract', and in part reads as follows:

" ' . . . that a certain contract of reinsurance entered into between the two companies under date of June 9, 1930, be and hereby is cancelled by mutual agreement as of the date of January 31, 1931.'

"Appellant uses the words 'cancelation' and 'rescission' interchangeably and synomymously, and, we think, erroneously, because the word 'canceled', applied to the agreement under the circumstances of the instant case, means no more than the doing away with an existing agreement; but this does not, in our opinion, extinguish any obligations that accrued prior to the date of cancelation. (*Winton* v. *Spring*, 18 Cal. 452.) In *Young* v. *Flickinger*, 75 Cal. App. 171 [242 Pac. 516], we find the following:

" ' . . . to "cancel" a contract means to abrogate so much of it as remains unperformed. It differs from "rescission", which means to restore the parties to their former position. The one refers to the state of things at the time of the cancellation; the other to the state of things existing when the contract was made.'

"Upon the authority of this case, coupled with the statement contained in the cancelation agreement that the same became effective as of the date of January 31, 1931, we conclude that the cancelation served only to do away with the existing agreement as of the date mentioned; but such termination did not relieve appellant of obligations incurred to third parties, such as respondents herein, during the time the contract was in force. When the insured Mack Lewis Sawyer died, September 29, 1930, respondents, as his beneficiaries, became thereby vested with a right to recover jointly from the insurance companies, and the lower court was correct in holding that the subsequent cancelation of the contract between the insurance companies did not obliterate or destroy the vested right and claim theretofore created in respondents.

■ "Concluding, as we do, that by reason of the so-called contract of reinsurance both the Roosevelt company and the Sunset company became jointly liable to respondents, we deem it unnecessary to discuss appellant's claim that the assignment by the Roosevelt company to respondents subsequent to the cancelation agreement of the company's rights under the reinsurance contract against the Sunset company, vested in respondents no right of action; for the reason that, in our opinion, respondents' claim and appellant's responsibility is not predicated upon the assignment, but springs from the contract entered into between the two insurance companies, which we hold to be a contract for the benefit of the policyholders of the Roosevelt Mutual Life Association."

■ With reference to the amount of liability to the beneficiaries under the policy of insurance, said policy provided: "If member is in good standing the Association hereby agrees to pay Sally E. Sawyer and George W. Sawyer (share and share alike) member's wife and son (the beneficiary hereunder) the sum of Three Thousand ($3,000) Dollars in cash immediately upon receipt of due proof of death of said member, . . . provided, however, that the said amount payable hereunder is conditioned that there be at least Three Thousand (3,000) members in good standing in the Association at the time of the death of said member, it being understood and agreed that should there be fewer than Three Thousand (3,000) members in the Association at the time of the death of said member, the amount payable hereunder shall be the sum of One ($1.00) Dollar for each member all in good standing."

The appellant in its fifth separate and distinct defense to the complaint alleged that on the date of the death of said Mack Lewis Sawyer, to wit, September 29, 1930, there were only 820 members of said Roosevelt Mutual Life Association in good standing, and that by the terms of said policy the total amount due thereunder to plaintiffs, if anything, was the sum of $820 and no more. The trial court found that it was not true that at the time of the death of said Mack Lewis Sawyer there were only 820 members of said Roosevelt Mutual Life Association in good standing, and further found that the evidence on said issue was insufficient for the court

to make a finding as to the exact number of members in good standing at said time.

It is respondents' contention that this defense could not be properly interposed in this action against the Sunset company by reason of the fact that the validity of the policy of insurance, and the amount to be recovered thereon, were in issue in the suit by respondents as plaintiffs against the Roosevelt company, wherein respondents secured a judgment in their favor for $3,000 and costs, and this adjudication is binding upon the Sunset company, which had been advised of the pendency of said action and had been afforded an opportunity to defend said action or to participate in the settlement thereof. More generally stated, it is respondents' contention that where one person is responsible over to another to pay the latter's obligation, either by law or contract, and he is notified of the pendency of a suit on that obligation against the latter and afforded a full opportunity to defend, but fails to do so, the judgment, if obtained without fraud or collusion, will be conclusive against him. (15 Cal. Jur., p. 203, sec. 226.)

We see no escape from the conclusion that the appellant herein is bound by the adjudication of the trial court in the suit against the Roosevelt Insurance Company as to the amount of liability under said policy of insurance. In *Commercial Union Assur. Co.* v. *American Central Ins. Co.*, 68 Cal. 430 [9 Pac. 712], the court said with reference to the liability of a reinsurer for a risk insured against by the original insurer: "Any judgment rendered against it [the original insurer] in the action would have conclusively established its [the original insurer's] liability, *and also the liability of the reinsurer upon its policy;* for it is a well-settled rule that where one is bound to protect another from liability he is bound by the result of a litigation to which such other was a party, provided he had notice of the litigation and opportunity to control and manage it, the rule being subject to the qualification that the litigation must have been carried on without fraud or collusion, and conducted in a reasonable manner." In the case of *Merino* v. *Pacific Coast Borax Co.*, 124 Cal. App. 336 [12 Pac. (2d) 458], the court held in an action by an employer, who had been held liable in workmen's compensation proceedings for compensation to an injured employee, against the Borax

company which was responsible for the accident resulting in the injury to the employee, that the award made by the Industrial Accident Commission against the employer was binding upon the Borax company as a measure of its liability for damages and as such was *res judicata*. It is not necessary for a reinsurer to actively participate in the defense of the action, provided it is proved that the reinsurer has notice of the pendency of the action and is afforded an opportunity to defend, and the defense is carried on without fraud or collusion by the original insurer. (15 Cal. Jur., p. 203, sec. 226.) No suggestion has been made herein that the original insurer, the Roosevelt Mutual Life Insurance Company, did not defend said action to the best of its ability, and the trial court found upon ample evidence that the Sunset Mutual Life Insurance had notice of the pendency of the action but refused to participate. It follows that the issue with reference to the number of members in good standing in the Roosevelt company at the time of the death of said Mack Lewis Sawyer—whether it be 820 members as pleaded in the answer, or 903 members as subsequently determined by the District Court of Appeal upon the evidence presented in the record, was not available to the appellant as a defense in this action against the Sunset company, instituted to fix the fact of the liability of the Sunset company by virtue of its contract with the Roosevelt company, because the amount of said liability upon the policy herein involved, had already been conclusively determined in the suit against the Roosevelt company.

The attempted appeals from the verdict and from the order denying the motion for a new trial are dismissed, as no appeals lie therefrom.

The judgment is affirmed.

Langdon, J., Shenk, J., Edmonds, J., Waste, C. J., Seawell, J., and Thompson, J., concurred.

Rehearing denied.