[Sac. No. 6914. In Bank. Feb. 10, 1959.]

GEDDES & SMITH, INC. (a Corporation), Appellant, v.
 SAINT PAUL MERCURY INDEMNITY COMPANY
 (a Corporation), Respondent.

Riggins, Rossi & Kongsgaard and Clarence N. Riggins for Appellant.

Desmond, McLaughlin & Russell and Jerome M. McLaughlin for Respondent.

TRAYNOR, J.—Plaintiff appeals from a judgment for defendant in an action to recover on an insurance policy issued by defendant to California Aluminum Products, Inc., hereinafter referred to as Aluminum Products.

Plaintiff, a building contractor, ordered 760 aluminum doors, door jambs, and attached hardware from Aluminum Products in November, 1950. The doors were to be used in 76 houses being constructed by plaintiff in the cities of Napa and Fairfield. The deliveries of the doors occurred from December, 1950, to February, 1951. The doors were kept in storage for some time, and plaintiff began to install them in May, 1951, and installed all of them within a few months. After installation, defects appeared in some of the doors within a few days and in others after various periods of time ranging up to six months. Some of the doors sagged on their hinges and dragged on the floors. Some went out of shape. Parts of some of the doors fell out. Some doors could not be closed and others that were closed became locked in place and could not be opened. Plaintiff notified Aluminum Products, which undertook to supply other doors. Many of the new doors had the same defects as the old. Some were found

In May, 1952, plaintiff brought an action against Aluminum Products alleging breach of warranty and negligence. Plaintiff alleged that by reason of expenses incurred in removing, installing, repairing, storing, and shipping doors, expenses incurred in office overhead during the time it was engaged in settling disputes arising out of installation of the doors and loss of profit, it was damaged in excess of $100,000. Aluminum Products notified defendant and asked it to defend the action. Defendant refused to do so on the ground that damage to the doors was excluded from coverage under the policy issued to Aluminum Products. Aluminum Products then undertook the defense of the action. It denied the allegations of the complaint and filed a cross-complaint for some $8,000 alleged to be unpaid on the doors. When that action came on for trial, counsel for both parties stipulated findings of fact and conclusions of law. Pursuant thereto, the court found that the allegations of the complaint were true, that nothing was unpaid on the doors, entered judgment on the complaint for plaintiff in the sum of $100,000 and costs, and entered judgment against Aluminum Products on the cross-complaint.

Plaintiff then brought this action against defendant to recover the amount of the judgment under the insurance policy issued by defendant to Aluminum Products. The judgment roll of the prior action was admitted into evidence.

The policy in question was issued for the period from May 1, 1951, to May 1, 1952. Under the terms of the policy defendant was obligated to defend any actions against Aluminum Products alleging damages within the policy coverage. An insurer that has been notified of an action and refuses to defend on the ground that the alleged claim is not within the policy coverage is bound by a judgment in the action, in the absence of fraud or collusion, as to all material findings of fact essential to the judgment of liability of the insured. The insurer is not bound, however, as to issues not necessarily adjudicated in the prior action and can still present any defenses not inconsistent with the judgment

against the insured. (*Sawyer* v. *Sunset Mutual Life Ins. Co.*, 8 Cal.2d 492, 499-501 [66 P.2d 641]; *Artukovich* v. *St. Paul-Mercury Indem. Co.*, 150 Cal.App.2d 312, 320-321 [310 P.2d 461]; see Rest., Judgments, § 107a, pp. 513-518.)

■ Defendant contends that the judgment against Aluminum Products is only presumptive evidence of the matters necessarily adjudicated therein because it was a stipulated judgment. This question need not be considered since the trial court's findings in the instant case on issues necessarily adjudicated in the prior action are the same as the findings in the prior action. Thus, the findings on such issues are supported by the record of the prior judgment, whether it be considered as conclusive on those issues or only as presumptive evidence thereon. The issues that defendant litigated in the trial court and that are raised in this appeal concern the scope of policy coverage and were not adjudicated in the prior action..

The pertinent provisions of the policy are as follows. Under Coverage "C," "Property Damage Liability other than Automobile," defendant agreed: "To pay on behalf of the Insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law or contract because of injury to or destruction of property, including the loss of use thereof, caused by accident." Under "Exclusions" it is provided that: "This Policy does not apply: . . . (e) under Coverage C, to injury to or destruction of (1) any goods or products . . . sold . . . by the Insured . . . out of which the accident arises." Endorsement number 1, effective May 1, 1951, entitled "Exclusion of Products Liability," provides: "It is agreed that the policy does not apply to: (1) the handling or use of, the existence of any condition in or a warranty of goods or products . . . sold . . . by the named insured occurring after the insured has relinquished possession thereof to others . . ." Endorsement number 4 was executed on April 1, 1952, and provided that retroactive to May 1, 1951, the "exclusion of products liability endorsement number 1 is cancelled flat." The policy provides that it applies to accidents taking place during the policy period.

■ Plaintiff contends that since endorsement 1 excluded liability for any breach of warranty of goods sold after the insured had relinquished possession thereof to others, its cancellation by endorsement 4 must be interpreted as providing coverage to the extent theretofore excluded, and that

accordingly damages for breach of warranty in the sale of the doors were necessarily covered. There is no merit in this contention. Each of the endorsements contains the provision: "Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the undermentioned Policy, other than as above stated." Coverage A provides for bodily injury liability. Coverage C includes damages "because of injury to or destruction of property, including the loss of use thereof, caused by accident." Exclusion (e) excepts "injury to or destruction of (1) any goods or products . . . sold . . . by the Insured . . . out of which the accident arises." Endorsement 1 is an additional products liability exclusion. It excludes products liability for damage to property other than the products themselves and bodily injuries. It neither increases the coverage nor limits the exclusions otherwise provided, and its cancellation by its express terms leaves such coverage and exclusions fully intact. Accordingly, plaintiff cannot recover under the policy unless the damages were damages "because of injury to or destruction of property, including loss of use thereof, caused by accident," and were not damages because of "injury to or destruction of (1) any goods or products . . . sold . . . by the Insured . . . out of which the accident arises."

■ Defendant contends that there was no injury to or destruction of property caused by accident. No all-inclusive definition of the word "accident" can be given. It has been defined "as 'a casualty—something out of the usual course of events and which happens suddenly and unexpectedly and without design of the person injured.' (*Rock* v. *Travelers Ins. Co.*, 172 Cal. 462, 465 [156 P. 1029, L.R.A. 1916E 1196]; *Richards* v. *Travelers Ins. Co.*, 89 Cal. 170, 175 [26 P. 762, 23 Am.St.Rep. 455].)" (*Zuckerman* v. *Underwriters at Lloyd's*, 42 Cal.2d 460, 473 [267 P.2d 777].) It " 'includes *any event which takes place without the foresight or expectation of the person acted upon or affected by the event.*' " (*Richards* v. *Travelers Ins. Co.*, 89 Cal. 170, 176 [26 P. 726, 23 Am.St.Rep. 455]; see also *Ritchie* v. *Anchor Casualty Co.*, 135 Cal.App. 2d 245, 252-253 [286 P.2d 1000]; *Moore* v. *Fidelity & Cas. Co.*, 140 Cal.App.2d Supp. 967, 971 [295 P.2d 154].)

■ "Accident, as a source and cause of damage to property, within the terms of an accident policy, is an unexpected, unforeseen, or undesigned happening or consequence from

either a known or an unknown cause.'' (*Hauenstein* v. *Saint Paul-Mercury Indem. Co.,* 242 Minn. 354 [65 N.W.2d 122, 126].) The door failures were unexpected, undesigned, and unforeseen. They were not the result of normal deterioration, but occurred long before any properly constructed door might be expected to wear out or collapse. Moreover, they occurred suddenly. It bears emphasis that we are concerned, not with a series of imperceptible events that finally culminated in a single tangible harm (*cf., Canadian Radium & Uranium Corp.* v. *Indemnity Ins. Co.,* 342 Ill.App. 456 [97 N.E.2d 132, 139-140]), but with a series of specific events each of which manifested itself at an identifiable time and each of which caused identifiable harm at the time it occurred. The trial court found that ''these defects, in some cases, developed within a few days after [the doors] were installed and in some cases as much as six months elapsed after the doors were installed, but that eventually all the original 760 doors so sold and delivered by the California Aluminum to plaintiff proved defective and fell apart. That said doors sagged on their hinges, went out of shape, they dragged on the floors and the inside parts of said doors fell out. That when said doors came apart they would frequently lock themselves in place and could not be opened. In other cases doors that were closed and locked would fall apart and come open. That when the dwelling houses were occupied by purchasers, as hereinafter set forth, the occupants would frequently leave their premises with the doors closed and locked and on their return find the doors had come apart and the houses were wide open. That in many cases, by reason of these defects in the doors, it was impossible for the occupants to lock the doors, or even to close the doors at night. That when temperatures arose in the houses the said doors would also emit noises that sounded like the explosion of fire crackers.'' Thus, although it may have taken many months for all of the doors to fail and fall apart, it is clear that each door, when it failed, failed suddenly. At one moment it was a usable door, at the next it was not. Had the door failure resulted in direct physical injury to the houses, the accidental cause of the harm would be obvious, but other harms flowing from the door failures were likewise accidentally caused. Accordingly, the crucial issue is which, if any, of these harms were within the policy coverage.

It is not disputed that injury to or destruction of the

doors themselves was excluded by exclusion (e). Plaintiff contends, however, that both the houses and its business were damaged by the door failures. With respect to the houses its position is supported by *Hauenstein* v. *Saint Paul-Mercury Indem. Co.*, 242 Minn. 354 [65 N.W.2d 122]. In that case the insured sold defective plaster that was used to plaster a house. The plaster shrank and cracked to such an extent that it was of no value and had to be removed so that the walls and ceilings could be replastered with a different material. Injury to the plaster itself was excluded from coverage. The court held, however, that injury to the house had occurred and was covered under a clause identical with Coverage C in the present case. ''No one can reasonably contend that the application of a useless plaster, which has to be removed before the walls can be properly replastered, does not lower the market value of a building. Although the injury to the walls and ceilings can be rectified by removal of the defective plaster, nevertheless, the presence of the defective plaster on the walls and ceilings reduced the value of the building and constituted property damage. The measure of damages is the diminution in the market value of the building, or the cost of removing the defective plaster and restoring the building to its former condition plus any loss from deprival of use, whichever is the lesser.'' (68 N.W.2d at 125.) In *Volf* v. *Ocean Accident & Guar. Corp.*, 50 Cal. 2d 373 [325 P.2d 987], a case also involving defective plaster, we distinguished the Hauenstein case on the ground that in the Volf case it was not necessary to remove the defective plaster before replastering the house. In the present case, however, it was necessary to remove the defective doors before they could be replaced, and we see no reason for not following the Hauenstein case and permitting recovery for damages to the houses according to the rule stated therein.

Plaintiff's judgment against the insured was not limited to such damages. In addition to costs of removal of the doors and loss of use of the houses, it included the other costs of handling the defective doors and their replacements, loss of profits, and loss of goodwill. Plaintiff contends, however, that these additional items of damages constituted damages to its business and goodwill and were therefore damages ''because of injury to or destruction of property.'' We cannot agree with this contention.

When coverage C is read in the light of the exclusions

applicable thereto, it is clear that the word property refers to physical or tangible property. Thus it is such property, not goodwill or a business entity, that is ordinarily thought of as the subject of use, and it is to damage to such property that all of the exclusions are directed. Any breach of contract may harm the business of the injured party, and if sufficiently serious, may affect his goodwill. Such damages, however, are not commonly thought of as injuries to or destruction of property within the meaning of a public liability insurance policy. Defendant did not undertake to insure against all breaches of contract caused by accident. It required an injury to or destruction of property and excluded injury to or destruction of goods or products sold by the insured. The significance of this exclusion would be obvious had the defects appeared before any of the doors had been installed. In such event it could not be seriously contended that an injury to property other than the doors had occurred within the meaning of the policy even though plaintiff's inability to use them seriously interfered with its business and injured its goodwill. Such damages are no less outside the coverage of the policy because there was also damage to the houses.

To summarize, it appears from the specific facts found that there was injury to the houses caused by accident and that therefore the trial court's conclusion to the contrary cannot stand. Since the judgment against Aluminum Products, however, also included additional elements of damages not covered by defendant's policy, we cannot grant plaintiff's motion to amend the findings and enter judgment for the full amount sought in its favor.

The motion to amend the findings is denied and the judgment is reversed for further proceedings in accord with the views herein expressed.

Gibson, C. J., and Schauer, J., concurred.

CARTER, J.—I concur in the judgment and in the majority opinion except the reasoning therein that the case of *Volf* v. *Ocean Accident & Guar. Corp.*, 50 Cal.2d 373, 377 [325 P.2d 987], is distinguishable from *Hauenstein* v. *Saint Paul-Mercury Indem. Co.*, 242 Minn. 354 [65 N.W.2d 122], relied upon in support of the conclusion reached in the case at bar. In my opinion the conclusion reached by a majority of this court

in the instant case is inconsistent with that reached by it in the Volf case. In my dissenting opinion in the Volf case I set forth in detail the reasons why the insurance policy there involved was ambiguous and why, under the decided cases, such ambiguity should be resolved in favor of the insured. I pointed out that the primary function of insurance is to insure—to provide full coverage of the indicated risk. Businessmen are not usually lawyers and in the normal course of events must rely on the agents of insurance companies when buying insurance. If this court continues to "interpret" patently ambiguous and inconsistent clauses in insurance policies to the detriment of the insured rather than resolving such ambiguities in his favor, the door will be opened for still more ambiguities and even less insurance coverage for the money expended than is presently the case. It is my view that this court could, and should, when such an ambiguous policy is before it, hold without equivocation that the provisions which are confusing and ambiguous as to the liability covered will be resolved in favor of the insured. If a few of such forthright decisions were rendered by this court in this field it would not be long before insurance policies were more clearly and understandably written to express the true intent of the parties and there would be less litigation involving insurance policies.

SPENCE, J.—I dissent.

The policy coverage was limited to "liability imposed . . . because of injury to or destruction of property, . . . *caused by accident.*" (Emphasis added.) The trial court found: "That it is not true that any of the defects in any of said doors or any of the expenses incurred or losses sustained by plaintiff was caused by accident." In my opinion this was the only finding which the trial court could properly have made under the undisputed facts. There was no "sudden and unexpected" event or anything which happened "suddenly and unexpectedly" so as to bring the situation within any accepted meaning of the phrase "injury to or destruction of property, . . . caused by accident." (*Zuckerman* v. *Underwriters at Lloyd's,* 42 Cal.2d 460, 473 [267 P.2d 777]; *Rock* v. *Travelers Ins. Co.,* 172 Cal. 462, 465 [156 P. 1029, L.R.A. 1916E 1196]; *Richards* v. *Travelers Ins. Co.,* 89 Cal. 170, 175 [26 P. 762, 23 Am.St.Rep. 455].) Thus, the effect of the majority opinion is to convert a so-called public liability policy, limited to liability imposed for damage "caused by accident,"

into an agreement to indemnify the insured against liability for the insured's failure faithfully to perform its contractual obligations regardless of the showing of any "accident."

In *Volf* v. *Ocean Accident & Guar. Corp.*, 50 Cal.2d 373 [325 P.2d 987], a somewhat similar policy was involved. This court found it unnecessary there to determine the scope of the insuring clause using the term "caused by accident," as the facts clearly brought the situation within one of the exclusionary clauses of the policy. (*Ibid*, p. 375.) In my opinion, this court could have properly reached the same result in the Volf case by holding that the facts did not bring the situation within the plain provisions of the insuring clause. This court there distinguished *Hauenstein* v. *Saint Paul-Mercury Indem. Co.*, 242 Minn. 354 [65 N.W.2d 122], but in the present case, the majority relies upon that case to support its position. I do not believe that the cited case was correctly decided, and therefore I would not follow it.

The majority opinion also cites and relies upon *Ritchie* v. *Anchor Casualty Co.*, 135 Cal.App.2d 245 [286 P.2d 1000]. The policy there was quite similar, insuring against liability for damages "caused by accident." The insured sold rancid peanut oil which was used by its customer in the manufacture of food products. The use of such oil by its customer "ruined all food products in which it was used, and damaged the machinery employed in the manufacture of same." (P. 252.) The court there quoted the approved definition of accident as something "which happens suddenly and unexpectedly" (p. 253) and held that the liability of the insured was embraced within the terms of the insuring clause. Unlike the present case, the use of the rancid peanut oil there "suddenly and unexpectedly" caused damage to both the entire mass of the food product into which it was mixed and to the machinery used in the processing. Here, nothing happened "suddenly and unexpectedly" and there was no damage to the houses except for the fact that the doors themselves proved to be defective. It is therefore clear that the insured's liability was not a liability for damage "caused by accident."

I would affirm the judgment.

Shenk, J., and McComb, J., concurred.