[Civ. No. 42870. First Dist., Div. Four. Nov. 3, 1978.]

INDUSTRIAL INDEMNITY COMPANY, Plaintiff and Respondent, v. TEACHERS' RETIREMENT BOARD et al., Defendants and Appellants.

94

**COUNSEL**

Evelle J. Younger, Attorney General, and Julian O. Standen, Deputy Attorney General, for Defendants and Appellants.

Pettit & Martin, Guy O. Kornblum and Arnold R. Levinson for Plaintiff and Respondent.

OPINION

**CHRISTIAN, J.**—The Teachers' Retirement Board and its chief executive officer appeal from a summary judgment in favor of respondent Industrial Indemnity Company, determining the status in relation to teachers' retirement benefits of payments received by a retired teacher under a certain group accident and health insurance policy purchased by the Grossmont Union High School District. We affirm the judgment.

On November 1, 1970, Industrial Indemnity Company issued a group disability policy to the Grossmont Union High School District. The premiums for the policy were paid from salary funds budgeted by the school district, but were remitted directly to Industrial Indemnity by the school district. The policy provides for disability benefits for all permanent, active, full-time salaried employees. Monthly benefits up to $1,000 are payable to age 65 in an amount equal to 66⅔ percent of the employee's monthly salary. The policy contains the following integration clause: "Integration—benefits provided will be reduced by any amounts paid or payable under the disability or retirement provisions of the Social Security Act (including any payments for eligible dependents) any Workmen's Compensation or any Occupational Disease Act or Law, any State Compulsory Disability Benefit Law; any Disability retirement or income benefits provided by or through the employer."

On December 12, 1971, Hazel A. Bole, assistant director of personnel of the Grossmont Union High School District, suffered a stroke which has permanently disabled her. Bole applied for benefits under the group disability policy issued by Industrial Indemnity to the Grossmont Union High School District. The insurer determined that Bole was eligible for the maximum benefit of $1,000 per month.

As a member of the State Teachers' Retirement System (hereinafter STRS), Bole was also eligible for STRS long-term disability benefits. An application by her for such benefits was approved, establishing eligibility for monthly benefits of $1,073.73.

Industrial Indemnity and STRS took the position that a statute allowing it to integrate benefits from publicly supported disability programs had taken effect prior to the presentation of Bole's claim to Industrial Indemnity. Conversely, Industrial Indemnity claimed the right to integrate the unmodified benefit allowed by STRS. Had both

Industrial Indemnity and STRS continued to maintain their respective positions on the matter, Bole would have been left with a monthly benefit of only $73.73. However, Industrial Indemnity informed Bole that, despite Industrial's belief that the position taken by STRS was erroneous, Industrial would make benefit payments of $1,000 per month, reserving its right to seek reimbursement from STRS to the extent of the permissible integration of STRS benefits. The present litigation was then commenced.

■ Appellants contend that the trial court erred when it determined that the group disability policy issued to the school district by Industrial was not a "disability program financed from public funds" within the meaning of section 22136[1] of the Education Code. Appellants contend that Industrial's policy must be classified as one which was "financed from public funds" and therefore appellants were entitled to integrate the benefits payable under Industrial's policy pursuant to section 24102[2] of the Education Code. This contention has merit. Section 22136 provides: " 'Other public systems' means the old age, survivors, disability and health insurance program provided by the Federal Social Security Act, the federal civil service retirement program, federal military disability, railroad retirement, a workman's compensation program, federal railroad retirement or any other public retirement system *including any disability programs financed from public funds.*" (Italics added.) It is clear that the Industrial policy does not constitute *government* insurance, such as the insurance provided by the Federal Social Security Act or by the State Teachers' Retirement System; the program is administered by a private insurance company and liabilities under the system are not dischargeable out of government appropriations. The school district in procuring group disability insurance on behalf of its employees from a private insurance carrier, "acts not as an insurer, but as the procuring agent." (*Carlson* v. *Carlson* (1974) 11 Cal.3d 474, 478 [113 Cal.Rptr. 722, 521 P.2d 1114].) The policy was not purchased to conform to a mandated insurance program such as the state workers' compensation program. Nevertheless, the funds which provided the fringe benefit of disability insurance were appropriated by the school district. The payment of premiums for a disability policy was an additional benefit provided by the school district to its employees in lieu of a salary increase. No deductions from the employees' paychecks were made to cover the cost of the premiums. As appellants point out,

[1]At the time of the events in question, Education Code section 22136 was section 13844.2.

[2]At the time of the events in question, Education Code section 24102 was section 14261.

"Bole never had any control or possession over that minute portion of the premium payments which could be allocated to her coverage and indeed did not even have the right to decline coverage and accept as an alternative an increase in her salary." The premium payments were not included in the computations of the gross salaries of the covered employees. No federal or state income taxes were paid by the employees on the premium payments. (See 26 U.S.C. § 106; Rev. & Tax. Code, § ₁17140.) Thus, although the disability coverage afforded to Grossmont Union High School·District employees was not a government insurance program such as STRS or a mandated insurance program such as workers' compensation, the policy was nevertheless purchased by the school district for its employees from public moneys; therefore, the policy must be characterized as a disability program which was "financed from public funds" within the meaning of section 22136. Reversal of the judgment would be required if the new statute is applicable to Bole's case.

◼ Appellants contend that it was error for the trial court to conclude that the application of section 24102 to the present case would have a retroactive effect which was not intended by the Legislature. They contend that no retroactivity is involved in the application of sections 22136 and 24102 to this case.[3]

◼ A statute has a retroactive effect when it is construed so as to relate back to a previous transaction and give the transaction a legal effect different from that which prevailed under the law when it occurred. (*Abrams* v. *Stone* (1957) 154 Cal.App.2d 33, 40-41 [315 P.2d 453].) The problem of retroactivity usually arises when allegedly vested rights or substantive rights are affected by a new enactment. (*Abrams* v. *Stone, supra,* 154 Cal.App.2d at pp. 40-41.) Two distinct questions are usually involved: first, the question of whether the Legislature intended the statute to be retroactive and, if so, the question of the constitutionality of the retroactive legislation (e.g., whether retroactive application of the statute would impair the obligation of contracts in violation of the

---

[3]The following represents a brief chronology of the significant events involved in this case:

(a) November 1, 1970: Respondent Industrial's policy with the school district became effective.

(b) December 12, 1971: Hazel Bole suffered a stroke and her disability commenced.

(c) July 1, 1972: Industrial's policy with the school district lapsed; the code sections became operative.

(d) May 7, 1973: Industrial received Hazel Bole's claim for disability benefits.

(e) July 23, 1973: Appellant STRS received Hazel Bole's claim for disability benefits.

contract clauses of the federal and state Constitutions).[4] Statutes will be construed as prospective in operation and not as retroactive unless the latter effect is required by the language of the statute itself. (*Chaney* v. *L. A. County Retirement Bd.* (1943) 59 Cal.App.2d 413, 415 [138 P.2d 735].)

In the present case, the statutes (Ed. Code, §§ 22136 and 24102) changed the right of appellant STRS to integrate benefits payable under other policies, allowing it to do so where benefits were paid by "any disability program financed from public funds." This change affected Industrial's right under its contract to integrate the benefits payable by STRS with the benefits payable under its own policy. Industrial's policy was issued and Bole's disabling injury occurred prior to the operative date of the statute. Industrial's obligation to provide disability benefits to Bole, and Bole's right to receive such benefits, vested and was fixed in amount, the moment her disability commenced. (See *Snapp* v. *State Farm Fire & Cas. Co.* (1962) 206 Cal.App.2d 827, 832 [24 Cal.Rptr. 44]; see also *Sawyer* v. *Sunset Mutual Life Ins. Co.* (1937) 8 Cal.2d 492, 498 [66 P.2d 641].)[5] The present case is to be distinguished from situations where changes in circumstances (including statutory changes) may nullify the underwriting judgments which led to the issuance of a policy of insurance. In such situations the insurer can protect itself by terminating coverage. Here indeed Industrial did withdraw coverage, effective when the new enactment *precluded* integration. But its liability to Bole in a fixed amount had already attached and is not challenged. The liability was created by a policy of insurance which was not merely issued in reliance on an expectation that integration would be permitted. The policy explicitly provided for a reduction in benefits to achieve integration. No constitutional basis is seen for holding Industrial to a contractual duty which became a vested right of Bole on December 12, 1971, but depriving Industrial of the benefit of another provision of the same contract by applying to it a statute which did not become effective until July 1, 1972. The trial court acted correctly when it determined that to

[4]United States Constitution, article I, section 10; California Constitution, article I, section 9.

[5]When the *claim* itself was filed, the policy had lapsed. It should also be noted that the claim was filed *after* the operative date of the statutes. Appellants contend that the date of filing of the claim should be considered controlling with regard to Industrial's accrual of a right to integrate benefits under its contract. Therefore, appellants contend, no retroactivity problem arises because the statutes would be applied to rights acquired after their enactment. This contention must be rejected; the obligation was fixed in amount the moment it accrued, and the filing of a claim is merely a step in the administrative process which leads to payment of the obligation.

apply the statutes to this case would be to give them a retroactive effect. Absent clear indication to the contrary, a statute is presumed to be prospective only in operation and will not be retroactively applied unless such an intention clearly appears from the language of the statute itself. (*Whitmire v. H. K. Ferguson Co.* (1968) 261 Cal.App.2d 594, 602 [68 Cal.Rptr. 78].) We find no indication that the Legislature intended these enactments to alter obligations which had already vested.

The judgment is affirmed.

Cook, J.,* concurred.

**RATTIGAN, Acting P. J.**—I respectfully dissent. I agree with all of the conclusions expressed in the text of the majority opinion down to and including its footnote No. 5, but not thereafter. Specifically, I do not agree that the operation of former Education Code sections 22136 and 24102, on and after July 1, 1972, had an invalid "retroactive effect" upon respondent Industrial Indemnity Company's contractual obligation to Hazel Bole as it stood at that time. I am not persuaded, moreover, that the case presents any issues of statutory retroactivity or constitutionality.

At all times since Ms. Bole's disability commenced on December 12, 1971, Industrial has been contractually obligated to make disability benefit payments to her (1) which are scheduled in its insurance policy up to a maximum of $1,000 per month but (2) which the policy's so-called "integration clause" reduces by the amounts of specified parallel benefits "paid or payable" to her, including "any Disability or income benefits provided by or through . . . [her] . . . employer."[1] The last-quoted provision operates to reduce Industrial's payments to Ms. Bole by the offsetting amounts she is receiving from STRS.

However, the offsetting amounts of the various parallel benefits identified in the "integration clause" are subject to sporadic change by

---

*Assigned by the Chairperson of the Judicial Council.

[1]As the majority opinion indicates, the "integration clause" provides that the benefits payable to Ms. Bole "will be reduced by any amounts paid or payable under the disability or retirement provisions of the Social Security Act (including any payments for eligible dependents) [.] any Workmen's Compensation Law or any Occupational Disease Act or Law, any State Compulsory Disability Benefit Law; [or] any Disability retirement or income benefits provided by or through . . . [her] . . . employer." This language is called an "integration" clause because it appears under the caption "Integration" in Industrial's policy. In my opinion, the caption is an euphemism for which "offsets," or "Reductions In Benefits," would be more accurate substitutes.

their nature. The amounts in one category may be changed upon the commencement or termination of the benefits which underlie them. The amounts in another category may be changed by periodic legislative enactment because the amounts themselves are fixed by statute.[2]

In either case, the *offsetting amounts of the parallel benefits may fluctuate upward or downward.* (See my fn. 2, *ante.*) Industrial's "integration clause" therefore operates to reduce its payments to Ms. Bole, by the amounts of her STRS benefits, whatever those amounts might be *from time to time* while Industrial's coverage obligates it to make payments to her under its policy. If and when there is a change in those amounts during the period of Industrial's coverage, the change is *current* as of its effective date. It is not "retroactive" to the commencement of the coverage on a previous date. The 1972 statutes effected such a change, but *currently* as of their operative date (July 1, 1972) and not beforehand. They did not operate "retroactively" to the date (Sept. 12, 1971) upon which the Industrial's coverage of Ms. Bole commenced, and the change they brought about did not reduce its payments to her until they took effect on July 1, 1972.

Industrial assessed the prospect of such changes (upward or downward, and by legislative enactment or otherwise) when it exercised its "underwriting judgment" (the majority's term) in issuing the policy and scheduling the premiums. From its experience, it undoubtedly anticipated statutory changes which were likely to operate its "integration clause" in its

---

[2]One example in the first category would be disability benefits "paid or payable under" California's "Workmen's Compensation Law" (see my fn. 1, *ante*) to a recipient of benefits under Industrial's policy. Another would be certain "amounts paid or payable" to that recipient "under the disability . . . provisions of the Social Security Act." (See *ibid.*) Industrial's integration clause would reduce its payments to the recipient when he or she became entitled to the offsetting benefits and while they lasted. Their cessation would eliminate the offsetting reduction and increase Indstrial's payments accordingly.

The second category would include the amounts of various benefits "paid or payable under" California's "Workmen's Compensation Law," which the Legislature has increased from time to time over the years. (See, e.g., Historical Note, 44A West's Ann. Lab. Code (1971 ed.) § 4453, pp. 651-652.) It would also include the amounts of weekly benefits "paid or payable under" its "State Compulsory Benefit Law," which the Legislature has similarly increased at intervals. (See, e.g., Historical Note, 65 West's Ann. Unemp. Ins. Code (1972 ed.) § 2655, pp. 577-578.) Other examples in this category include *statutory increases* in the amounts of benefits "paid or payable under the disability . . . provisions of the Social Security Act," which have frequently been enacted by the Congress or effected upon its authority.

The cessation of the parallel benefits in the first category is hypothetical and unlikely, but not inconceivable. As is shown in the historical sources cited above, statutory increases in the second category have been commonplace.

favor. (See my fn. 2, *ante.*) It obviously did not anticipate the enactment of the 1972 statutes which have had the opposite effect. This reflects no more than a miscalculation of its "underwriting judgment." The risk of such miscalculation is a reality of the commercial insurance marketplace. An insurer may not avoid it by claiming a vested right in the stability of a pertinent condition which is subject to legislative change. That no such right exists is made clear in decisions disallowing constitutional protection to persons who have contracted, or otherwise acted, upon the misplaced assumption that a given enactment would remain in effect. (See, e.g., *HFH, Ltd.* v. *Superior Court* (1975) 15 Cal.3d 508, 511-512, 515-516 [125 Cal.Rptr. 365, 542 P.2d 237] and cases cited.)

The amounts of the benefits "payable" to Ms. Bole by STRS may not constitutionally be reduced by statute because she now has a vested right in them. STRS must now reduce the amounts "paid" to her, by the amounts Industrial must pay her under the policy, because the new statutes have required such reduction since they took effect on July 1, 1972. The amounts to be paid her under Industrial's policy must be correspondingly higher, commencing currently on that date and not retroactively, because the policy both contemplates and requires this and neither the Constitution nor any statute precludes it. Industrial's contractual obligation to Ms. Bole remains the same, subject to its contracted ceiling of $1,000 per month. Only the cost of its performance has changed, and Industrial bargained for the change when it issued the policy.

I perceive no constitutional problem, none involving statutory retroactivity, and no alternative to holding Industrial to the burden of its bargain. The judgment before us has the effect of shifting that burden to the State Teachers' Retirement Fund, to the teachers who finance its obligations in part, and to the taxpayers who fund the rest. I would reverse it.

A petition for a rehearing was denied November 30, 1978. Rattigan, J., was of the opinion that the petition should be granted. Appellants' petition for a hearing by the Supreme Court was denied December 27, 1978. Manuel, J., was of the opinion that the petition should be granted.