**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| BETHANY WILLIAMS; STEPHEN WILLIAMS, Co-Trustees of the Jack and Cheryl Williams Revocable Living Trust, *Plaintiffs-Appellants*, v. NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, a Pennsylvania corporation, *Defendant-Appellee*. | No. 13-55719 D.C. No. 3:12-cv-01590-AJB-WMC OPINION |

Appeal from the United States District Court
for the Southern District of California
Anthony J. Battaglia, District Judge, Presiding

Argued and Submitted
May 7, 2015—Pasadena, California

Filed July 7, 2015

Before: Kermit V. Lipez,* Kim McLane Wardlaw,
and Mary H. Murguia, Circuit Judges.

Opinion by Judge Lipez

---

 * The Honorable Kermit V. Lipez, Senior Circuit Judge for the First Circuit, sitting by designation.

## SUMMARY[**]

---

### Employee Retirement Income Security Act

Affirming the district court's summary judgment in an ERISA action, the panel held that an insurer properly denied accidental death benefits to the insured's family because his death as a result of Deep Vein Thrombosis did not result from an "accident" as defined by the insurance policy.

---

### COUNSEL

David A. Shaneyfelt (argued), The Alvarez Firm, Calabasas, California, for Plaintiffs-Appellants.

Sherry L. Swieca (argued), Mark R. Attwood, and Cynthia J. Emry, Jackson Lewis LLP, Los Angeles, California, for Defendant-Appellee.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## OPINION

LIPEZ, Circuit Judge:

This case, brought under the Employee Retirement Income Security Act ("ERISA"), stems from the sudden death of Jack Williams as a result of Deep Vein Thrombosis ("DVT") shortly after he completed roughly 28 hours of air travel in a five-day period. Appellee National Union Fire Insurance Co. of Pittsburgh, Pennsylvania denied accidental death benefits to Williams' family on the ground that his death did not result from an "accident" under the terms of the policy. The district court accepted the insurer's interpretation of the policy and granted summary judgment for National Union. Because we agree that Williams' death did not result from an "accident" as defined by the policy, and thus was not a covered "injury," we affirm.

## BACKGROUND

### I.  Facts

Jack Williams was an acclaimed horticulturist who traveled extensively in his role as the international product manager and technical support representative for Paul Ecke Ranch, Inc., a company based in Encinitas, California. In October 2010, Williams flew more than 15 hours from Los Angeles to Tokyo and shortly thereafter took three additional flights, totaling almost 13 hours, from Tokyo to several Australian cities. On the morning of October 18, Williams collapsed as he walked from his hotel to meet a colleague and was pronounced dead on arrival at a local hospital. An autopsy report attributed his death to DVT, which had triggered a pulmonary embolism ("PE").

DVT is a known hazard of long flights, with the risk of developing the syndrome approximately doubling after a flight of more than four hours and continuing to rise with increased travel time and multiple flights within a short period. The blood clots that give rise to DVT occur as a result of the prolonged seated immobility that accompanies air travel, likely in combination with dehydration and underlying risk factors. A clot that breaks off and travels through the bloodstream is called an embolus, which becomes life-threatening if it reaches the lungs and blocks blood flow. This apparently is what happened to Williams, who was otherwise in good health.

As a named insured under a policy purchased by his employer, Williams was eligible for a $1 million accidental death benefit if injured while traveling by air. The policy, which is governed by ERISA, defines injury in Endorsement E-5:

> Injury — means bodily injury: (1) *which is sustained as a direct result of an unintended, unanticipated accident that is external to the body* and that occurs while the injured person's coverage under this Policy is in force; (2) which occurs under the circumstances described in a Hazard applicable to that person; and (3) which directly (independent of sickness, disease, mental incapacity, bodily infirmity or any other cause) causes a covered loss under a Benefit applicable to such Hazard.

(Emphasis added.) Pursuant to the policy, Williams' wife, Cheryl, submitted a claim form titled "Proof of Loss -

Accidental Death," in which she reported the cause of death as "pulmonary thromboembolism deep vein thrombosis."[1]

National Union's claims administrator concluded that no benefits were payable, explaining in its letter that "there is insufficient evidence to support a conclusion that Mr. Williams experienced a bodily injury sustained as a direct result of an unintended, unanticipated accident that was external to the body and which directly (independent of sickness, disease, mental incapacity, bodily infirmity or any other cause) caused his death."[2]    Cheryl Williams unsuccessfully appealed the decision to National Union's ERISA Appeals Committee, which explained its rejection of her claim as follows:

> Based on the available information, Mr. Williams' death was the result of sickness, disease, bodily infirmity or a cardiovascular accident or event, an internal reaction of his body to an extended period of inactivity. There was no evidence that there was anything unusual about Mr. Williams' flights during this time period, nor was there

---

[1] Cheryl Williams died before the district court issued its decision, and the court granted the parties' motion to substitute Bethany Williams and Stephen Williams, co-trustees of the Jack and Cheryl Williams Revocable Living Trust, as named Plaintiffs.

[2] The policy expressly excludes from coverage "sickness, disease, mental incapacity or bodily infirmity whether the loss results directly or indirectly from any of these," and "even if the proximate or precipitating cause of the loss is an accidental bodily injury." Like the district court, we do not consider the applicability of the exclusions because we conclude that the policy does not provide coverage.

evidence that any unanticipated or unintended external event or bodily injury occurred which resulted in his deep vein thrombosis or pulmonary embolism.[3]

## II. Legal Proceedings

Following the final administrative rejection of her claim, Cheryl Williams initiated this federal action against National Union.  *See* 29 U.S.C. § 1132(a)(1)(B) (permitting a beneficiary of an employee benefit plan governed by ERISA to bring a civil action to recover benefits owed under the plan).  Both sides moved for summary judgment.  Cheryl Williams claimed that her husband's death occurred as a result of an accident as defined by the policy because the death was both unintended and unanticipated, and its cause—prolonged sitting on planes—was "external to the body."  National Union again pressed its view that no benefits were owed because Williams' death did not result from an unanticipated or unintended external event or bodily injury.

The district court ruled for the insurer, concluding that Plaintiffs had failed to establish entitlement to benefits because Williams' death did not result from "an accident 'external to the body,'" as required by both the express language of the National Union policy and prevailing California law.  *See Williams* v. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 3:12-cv-01590, 2013 WL 1431822, at *8 (S.D. Cal. Apr. 9, 2013)  (observing that "California courts have been unwilling to find that an injury or death was

---

[3] It is undisputed that other prerequisites to coverage (death during the policy period and injury occurring while traveling as a passenger on a civilian aircraft) were met.

'accidental' unless 'it was in some manner caused by an event or occurrence unforeseen and external to the insured'" (quoting *Khatchatrian* v. *Cont'l Cas. Co.*, 198 F. Supp. 2d 1157, 1162 (C.D. Cal. 2002) (footnote omitted)). The court rejected Plaintiffs' theory that Williams' death was accidental within the meaning of the policy because the DVT arose from "unintended external causes." Although agreeing that the condition arose unexpectedly, the court held that "the ordinary and common meaning of 'accident' does not encompass DVT/PE under these circumstances."

Accordingly, the court denied Plaintiffs' cross-motion for summary judgment and granted National Union's cross-motion. Plaintiffs timely appealed, reiterating their contention that Williams' death was a benefits-triggering injury under the policy.

## STANDARD OF REVIEW

We review de novo a district court's grant or denial of summary judgment. *Lopez-Valenzuela* v. *Arpaio*, 770 F.3d 772, 777 (9th Cir. 2014) (en banc). De novo review also applies to the denial of benefits under a plan subject to ERISA where, as here, the plan does not assign the administrator discretionary authority to determine benefits eligibility or construe the plan's terms. *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008); *Standard Ins. Co. v. Morrison*, 584 F.3d 837, 840 (9th Cir. 2009).

## DISCUSSION

### I. Principles of Construction

In construing the language of an ERISA-governed policy, courts apply federal common law. *Padfield* v. *AIG Life Ins. Co.*, 290 F.3d 1121, 1125 (9th Cir. 2002). Under that law, policy terms are interpreted in the "ordinary and popular sense as would a person of average intelligence and experience." *Id.* (quoting *Babikian* v. *Paul Revere Life Ins. Co.*, 63 F.3d 837, 840 (9th Cir. 1995)). In developing federal common law to govern ERISA claims, courts may "borrow from state law where appropriate, and [be] guided by the policies expressed in ERISA and other federal labor laws." *Id.* (quoting *Babikian*, 63 F.3d at 840) (alteration in original).

The policy provision at issue, Endorsement E-5, articulates three required elements of a covered "bodily injury": (1) it directly resulted from an "accident" that was both (2) "unintended [and] unanticipated," and (3) "external to the body." Hence, our task is to determine whether the average person, considering these prerequisites as they are articulated in the policy, would conclude that plaintiffs are entitled to accidental death benefits. *See Dupree v. Holman Prof'l Counseling Ctrs.*, 572 F.3d 1094, 1097 (9th Cir. 2009) (stating that the principles applicable to review of an ERISA policy "direct us to look to the agreement's language in context and construe each provision in a manner consistent with the whole such that none is rendered nugatory").

### II. Policy Interpretation

In arguing that Williams' death resulted from an "accident" as required by the National Union policy,

Plaintiffs attempt to take advantage of the imprecision of that word. The term "accident" has been described as a "vague concept," Lee R. Russ & Thomas F. Segalla, 10 *Couch on Insurance 3d* ("Couch 3d"), § 139:1, at 139-9 (rev. ed. 2009), that is "disarmingly difficult to define," *McAuley* v. *Fed. Ins. Co.*, No. 4:05CV1826 AGF, 2009 U.S. Dist. LEXIS 52899, at *52 (E.D. Mo. March 31, 2009). *See also Geddes & Smith, Inc.* v. *St. Paul-Mercury Indem. Co.*, 334 P.2d 881, 884 (Cal. 1959) (observing that "[n]o all-inclusive definition of the word 'accident' can be given"). Indeed, the varied definitions of "accident" include some with broad scope. One general purpose dictionary describes an accident, inter alia, as "an undesirable or unfortunate happening that occurs unintentionally and usually results in harm, injury, damage, or loss; casualty; mishap." *The Random House Dictionary of the English Language* 12 (2d ed. 1987). A widely used legal dictionary similarly includes one definition with expansive reach: "[a]n unintended and unforeseen injurious occurrence; something that does not occur in the usual course of events or that could not be reasonably anticipated." *Black's Law Dictionary* 18 (10th ed. 2014).

Consistently with these definitions, Williams' death itself reasonably could be characterized as an "accident." As Plaintiffs assert, his loss of life from DVT/PE was a sudden, unexpected, and out-of-the ordinary happening—a "casualty."[4]        However, the modifying language in

---

[4] As such, Williams' death differs from fatalities resulting from progressive conditions, such as a stroke or heart attack. *Cf. Khatchatrian* v. *Cont'l Cas. Co.*, 332 F.3d 1227, 1229 (9th Cir. 2003) (rejecting accidental death coverage where the insured died from a stroke); *Geddes & Smith*, 334 P.2d at 884 (emphasizing that an "accident" does not include "a series of imperceptible events that finally culminated in a single tangible harm").

Endorsement E-5 narrows the availability of benefits in a significant respect: the accident—i.e., the "unintended and unforeseen injurious occurrence," *Black's Law Dictionary*, at 18—must have been "external to the body."

Plaintiffs argue that the external-to-the-body requirement is met here because Williams' death resulted from circumstances that originated outside his body. They assert that Williams' "confined sitting set in progress a chain of events that led directly to his death." Br. at 30 (emphasis omitted); *see also id.* ("[T]he confined sitting was the prime or moving cause of death[.]" (emphasis omitted)). Hence, they claim, "the cause of death was external to him, although it acted internally." *Id.* (emphasis omitted).

In relying on this reasoning, however, Plaintiffs fail to acknowledge the relationship among the multiple requirements stated in Endorsement E-5. As noted, the provision covers an injury "sustained as a direct result of an unintended, unanticipated accident that is external to the body." The cause of death thus must be not only external, but also an "accident"—i.e., an unintended and unanticipated occurrence. Accordingly, contrary to Plaintiffs' view, coverage does not turn on whether "unexpected or unintended *harm* arose from an external cause during passenger air travel," Br. at 28 (emphasis added), but on whether there were external, *harm-causing circumstances* that were themselves unexpected and unintended. Although Williams' confined seating on planes may have been an external cause of his death, there was nothing "unintended" or "unanticipated"—i.e., nothing accidental—about his seating arrangement.

Nor did Williams encounter unusual circumstances during his flights that aggravated the impact of his prolonged seating.  Plaintiffs do not assert that he unexpectedly was prevented from moving around the planes, drinking fluids, or taking other measures to minimize the risk of DVT.  There was no reported intervention by airline personnel that could have affected Williams' physical well-being.  *Cf. Olympic Airways* v. *Husain*, 540 U.S. 644, 657 (2004) (characterizing a death triggered by an asthma attack as accidental where a flight attendant repeatedly refused to move the passenger from a seat near the plane's smoking section).  In their brief, Plaintiffs propose alternative scenarios that could have resulted in a fatal blood clot in an effort to bolster their argument that the cause of Williams' death was "external," but the hypothetical situations they offer—luggage falling from an overhead bin or a dining tray slamming into Williams' head—illustrate the difference between an unexpected *occurrence* "external to the body" and unexpected harm resulting from ordinary conditions.[5]

We thus conclude that no "person of average intelligence and experience," *Padfield,* 290 F.3d at 1125 (internal quotation marks omitted), would find that Williams died "as a direct result of an unintended, unanticipated *accident that is external to the body*."  Indeed, our analysis based on careful review of the policy language is reinforced by what we consider the common understanding of an "accidental death."  In ordinary parlance, an "accident" connotes an unintended, unexpected happening that may cause injury or damage to persons or property.  In other words, as popularly

---

[5] Similarly distinguishable are the cases that Plaintiffs cite involving fatal burns from an accidental fire, a slip-and-fall causing bleeding, and heart problems caused by a car accident or "unusual" physical stress.

understood, an accident is an unexpected occurrence separate from the harm that results from it. Williams' death does not fit that mold. *See Rodriguez* v. *Ansett Austl. Ltd.*, 383 F.3d 914, 919 (9th Cir. 2004) (concluding that the death of an airline passenger as a result of DVT was not accidental under Article 17 of the Warsaw Convention).[6]

## CONCLUSION

Plaintiffs plausibly argue that Williams' confined seating during his prolonged air travel was an "external" cause of his death. However, they point to no aspect of his flights or his seating position that departed from the usual conditions of such travel. Hence, regardless of whether Williams' death may be characterized as an externally caused "accident" when considering that word in isolation, his loss of life was not within the policy's coverage. His fatal injury did not directly result from an unintended and unanticipated happening "external to the body."

---

[6] Plaintiffs insist that *Rodriguez* and other Warsaw Convention cases concerning DVT "have no place in the construction of accidental death insurance policies" because the analysis of an "accident" under the Warsaw Convention is unique to that treaty-specific context. We agree that the textual analysis in the Warsaw Convention cases is not directly applicable here. Nonetheless, those cases are tangentially relevant because the meaning the Supreme Court has given to "accident" under the treaty substantially overlaps with the prerequisites for accidental injury benefits expressly stated in the National Union policy. *See Air France* v. *Saks*, 470 U.S. 392, 405 (1985) (holding that "liability under Article 17 of the Warsaw Convention arises only if a passenger's injury is caused by an unexpected or unusual event or happening that is external to the passenger").

We therefore affirm the district court's rulings granting summary judgment for National Union and denying summary judgment for Plaintiffs.

**AFFIRMED.**