CARPENTERS HEALTH AND WELFARE TRUST FOR SOUTHERN CALIFORNIA, Plaintiff–Appellant,

v.

Timothy VONDERHARR; Karen Vonderharr, minor by her guardian ad litem, Timothy Vonderharr; Lauren Vonderharr, minor by her guardian ad litem Timothy Vonderharr; Sara Vonderharr, minor by her guardian ad litem, Timothy Vonderharr; Charles R. Weldon Law Offices; Does, Ito X, inclusive; McClellan & Associates, a Professional Corporation, Defendants–Appellees.

Carpenters Health and Welfare Trust for Southern California, Plaintiff–Appellee,

v.

Timothy Vonderharr; Karen Vonderharr, minor by her guardian ad litem, Timothy Vonderharr; Lauren Vonderharr, minor by her guardian ad litem Timothy Vonderharr; Sara Vonderharr, minor by her guardian ad litem, Timothy Vonderharr; McClellan & Associates, a Professional Corporation, Defendants–Appellants.

Carpenters Health and Welfare Trust for Southern California, Plaintiff–Appellee,

v.

Timothy Vonderharr, Defendant,

and

Charles R. Weldon Law Offices, Defendant–Appellant.

Nos. 02–57183, 03–55296, 03–55312.

United States Court of Appeals, Ninth Circuit.

Argued Feb. 5, 2004.

Submitted and Filed Sept. 15, 2004.

Gerald Selvo and Desmond Lee, Decarlo, Connor & Selvo, Los Angeles, CA, for the appellant.

Craig R. McClellan, John H. Gomez, and Cindy Lane, McClellan & Associates, San Diego, CA, Donald M. de Camara, Law Offices of Donald M. de Camara, Carlsbad, CA, for the appellees.

Before: CANBY, JR., NOONAN, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge:

Carpenters Health and Welfare Trust for Southern California (the "Trust") appeals the dismissal of its action seeking reimbursement of medical benefit payments from a personal injury recovery obtained by plan participant Timothy Vonderharr and his family. We affirm in part, vacate in part, and remand.

I

This action arises out of an automobile accident in December, 1998, in which four members of the Vonderharr family were injured. Lauren Vonderharr, age 11, suffered a permanent brain injury in the crash and incurred most of the family's medical bills. The Trust is an employee benefit plan governed by Section 3(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(3). It provides medical benefits for active and retired carpenters covered by collective bargaining agreements maintained between the Southwest Regional Council of Carpenters and construction contractors in the southwest United States. Timothy Vonderharr is an active carpenter covered by the collective bargaining agreement and is a Trust plan participant. Pursuant to the plan, the Trust paid $155,224.43 in medical expenses for the Vonderharrs. Prior to paying the Vonderharrs' claims, the Trust required the Vonderharrs and Weldon to sign a document giving the Trust a lien on any recovery they obtained from a third party. This requirement was contained in the Summary Plan Description and stated that:

> If you or one claiming through you . . . has received or may receive payments, from any source whatsoever, in whole or in part for injury or illness for which benefits are otherwise provided by the Trust, you and/or the one claiming

through you are required to reimburse the Trust from the net proceeds of these payments, up to the actual amount of benefits paid by the ... Plan(s) for expenses arising from that injury or illness. You and those acting for you will be required to sign documents to carry out the Trust's reimbursement rights. If you fail to sign these documents or otherwise to fulfill the reimbursement obligation, the Trust may refuse to extend any benefits that would otherwise be provided by the Trust for the injuries or illness involved.

Following the accident, the Vonderharrs filed suit against the driver of the other vehicle and Ford Motor Company. In March, 2001, the Orange County Superior Court approved a $30,000 settlement agreement reached between the Vonderharrs and the other driver. The Trust alleges that the Vonderharrs settled their action against Ford in April, 2002.

■ In response to inquiries from the Trust, the Vonderharrs communicated their view through their counsel that the contractual reimbursement provisions were unenforceable under ERISA. After further negotiations proved unsuccessful, the Trust filed an action seeking, among other relief, a temporary restraining order enjoining any distribution of settlement proceeds. The district court denied the request for a temporary restraining order, and subsequently granted the Vonderharrs' motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6). The district court denied the Vonderharrs' request for attorneys' fees. The Trust appeals the dismissal of the action; the Vonderharrs cross-appeal the order denying attorneys' fees. We review a dismissal for failure to state a claim pursuant to FRCP 12(b)(6) *de novo*. *Libas Ltd. v. Carillo,* 329 F.3d 1128, 1130 (9th Cir.2003).

II

The Supreme Court has often observed that "ERISA is a comprehensive and reticulated statute, the product of a decade of congressional study of the Nation's private employee benefit system." *Great–West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 209, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002) (internal quotation marks and citations omitted). As part of its expansive regulation of employee benefit plans, ERISA provides for a federal cause of action for civil claims to enforce the provisions of an ERISA plan. In so providing, "Congress's primary goal was to replace the patch-work quilt of state law with a uniform body of federal law and to provide litigants with access to federal courts to enforce their newly created rights." Schneider and Freedman, *ERISA: A Comprehensive Guide* (2d ed.2002), § 8.01, p. 8–3. Thus, courts have construed extra-statutory remedies available under ERISA quite narrowly. As the Supreme Court has stated, "ERISA's carefully crafted and detailed enforcement scheme provides strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate directly." *Id.* (internal quotation marks and citations omitted) (emphasis in original).

■ To make an ERISA civil enforcement claim, "a plaintiff must fall within one of ERISA's nine specific civil enforcement provisions, each of which details who may bring suit and what remedies are available." *Reynolds Metals Co. v. Ellis,* 202 F.3d 1246, 1247 (9th Cir.2000). In this case, the Trust filed its action pursuant to the third enumerated category, which provides that a civil action may be brought:

by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress

such violations or (ii) to enforce any provisions of this title or the terms of the plan.

29 U.S.C. § 1132(a)(3).

The Supreme Court has construed the phrase "appropriate equitable relief" narrowly, noting that such equitable relief is limited to redressing violations or enforcing provisions of ERISA or an ERISA plan. *Mertens v. Hewitt Assoc.*, 508 U.S. 248, 253–54, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993). The Supreme Court has eschewed a compensatory monetary award as an available ERISA remedy and held that the equitable relief referenced in ERISA is limited to those "categories of relief that were *typically* available in equity." *Id.* at 256, 113 S.Ct. 2063. ERISA does not provide a cause of action for legal actions for monetary damages disguised as suits in equity. *Great–West Life*, 534 U.S. at 215–16, 122 S.Ct. 708. Indeed, the Supreme Court has drawn a "fine distinction" between those actions that are truly legal in nature and those that constitute allowable "appropriate equitable relief" under ERISA, regardless of the label attached to the claim. *Id.* at 214–15, 122 S.Ct. 708.

We have also adhered to this philosophy. In *Watkins v. Westinghouse Hanford Co.*, 12 F.3d 1517 (9th Cir.1993), we held that only traditional forms of equitable relief were available under ERISA. We explained that "[i]t makes no difference that the Watkinses' claim is equitable in nature;" rather, the critical factor was the "substance of the remedy sought (*i.e.*, injunction versus damages) rather than the label placed on that remedy." *Id.* at 1527–28 n. 5. In *McLeod v. Oregon Lithoprint Inc.*, 46 F.3d 956, 960 (9th Cir.1995), we similarly held that "equitable relief in the form of recovery of compensatory damages is not an available remedy" under ERISA.

In *FMC Medical Plan v. Owens*, 122 F.3d 1258 (9th Cir.1997), we held that the equitable remedy of "equitable reimbursement" was not available under ERISA, because what the plaintiff was truly seeking was "reimbursement for money that Owens rightfully received under the Plans." *Id.* at 1261. We explained that: "Essentially, FMC seeks a breach of contract claim for monetary relief, albeit under its classification of 'equitable reimbursement.' " *Id.* "Such monetary relief," we noted, "is not available under section 1132(a)(3)." *Id.* We noted that an action to impose a constructive trust was an allowable ERISA remedy. However, we observed that "a constructive trust is born of some form of ill-gotten gain of another's property." *Id.* In addition to that traditional requirement, we stated that "in order to allow a claim for constructive trust under ERISA, a breach of fiduciary duty must be present." *Id.*

In *Cement Masons Health and Welfare Trust Fund for Northern California v. Stone*, 197 F.3d 1003 (9th Cir.1999), we considered a lawsuit filed by a health plan to recover medical expenses paid on behalf of a plan participant from proceeds recovered on a wrongful death claim. The plan sought restitution, declaratory relief, and an injunction requiring enforcement of the contractual lien. We held that such remedies were not permitted under ERISA, specifically noting that the remedy of restitution was limited to cases involving "money obtained through fraud or wrongdoing." *Id.* at 1006–07 (internal quotation marks omitted). We rejected the suggestion that the fact that the plan sought enforcement of a lien altered the analysis, stating that "[e]nforcement of a lien, however, is nothing more than a mechanism to enforce, or to obtain the equivalent of, a damage remedy." *Id.* at 1007.

In *Reynolds Metals Co. v. Ellis*, 202 F.3d 1246 (9th Cir.2000), Reynolds Metal sought reimbursement of the medical ex-

penses that employee Ellis received from a third party settlement resulting from an accident. Reynolds conceded that its claims were foreclosed by *Owens,* but argued that *Owens* conflicted with *Mertens* in its limitation of available ERISA remedies. We firmly rejected that contention, observing that *Owens* was based on *Mertens* and did not preclude all claims for relief, but appropriately limited restitution and constructive trust remedies to those situations in which fraud or wrong-doing is shown. *Id.* at 1249. We reiterated the rule that "actions by ERISA fiduciaries seeking to enforce an ERISA plan's contractual reimbursement provisions do not fall within § 1132(a)(3)." *Id.*

In *Westaff (USA), Inc. v. Arce,* 298 F.3d 1164, 1167 (9th Cir.2002), the plaintiff sought reimbursement for medical benefits through the mechanism of a claim for declaratory relief and specific performance. We rejected this attempt to circumvent ERISA's restrictions, holding that "Westaff [was] seeking to enforce a contractual obligation for the payment of money, a classic action at law and not an equitable claim." *Id.* at 1166. We also noted that the fact that the money had been placed in an escrow account and remained specifically identifiable made no difference to the result. *Id.* at 1167.

Recently, we reiterated our holding under a slightly different factual scenario in which the ERISA plan sought to recover funds it had expended for training. *Honolulu Joint Apprenticeship & Training Cmte. of United Assoc. Loc. Un. No. 675 v. Foster,* 332 F.3d 1234 (9th Cir.2003). However, the rationale was the same: The remedy sought was essentially an action at law to remedy a breach of a legal obligation, rather than a true suit in equity. *Id.* at 1238.

■ In sum, to state a cause of action under § 1132(a)(3), an ERISA plan must "demonstrate (1) that it is an ERISA fiduciary, and (2) that it is seeking equitable, rather than legal, relief." *Reynolds Metals,* 202 F.3d at 1247. "[A]ctions by ERISA fiduciaries seeking to enforce an ERISA plan's contractual reimbursement provisions do not fall within § 1132(a)(3)." *Id.* at 1249. The remedies of restitution and the imposition of a constructive trust are available under § 1132(a)(3), but only as true equitable remedies and provided the traditional requirements of fraud or wrong-doing are satisfied. *Id.* at 1248.

## III

■ In this case, the Trust filed a complaint seeking reimbursement under § 1132(a)(3) from the proceeds of third party tort settlements for money the Trust paid on behalf of the Vonderharrs to medical care providers pursuant to the terms of the employee health benefit plan. After dismissal of the first complaint, the Trust filed an amended complaint seeking the imposition of "a constructive trust and/or equitable lien" and declaratory relief.

Relying on the solid wall of authority to which we have referred, the district court appropriately dismissed the complaint as seeking relief that was not available under ERISA. On appeal, the Trust argues that *Owens, Cement Masons, Reynolds Metals,* and their progeny have all been overruled by the Supreme Court in *Great–West Life,* 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002) and *Harris Trust v. Salomon Smith Barney,* 530 U.S. 238, 120 S.Ct. 2180, 147 L.Ed.2d 187 (2000). The Trust is wrong.

*Great–West Life* buttressed rather than overruled our holdings. Indeed, *Great–West Life* affirmed our unpublished opinion which the Supreme Court characterized as holding "that judicially decreed reimbursement for payments made to a beneficiary of an insurance plan by a third party is not equitable relief and is there-

fore not authorized by § 502(a)(3)." 534 U.S. at 208, 122 S.Ct. 708.

As in this appeal, the plan at issue in *Great–West Life* included a reimbursement provision, which specifically provided for the plan's right to recovery of benefits paid from a third party and also provided for a lien on proceeds from tort recoveries. The plan in *Great–West Life* filed an action seeking injunctive and declaratory relief under § 502(a)(3) to enforce the reimbursement provision of the plan by requiring the payment of proceeds recovered from third parties. *Id.* Consistent with its prior authority and with our precedent, the Supreme Court held that this type of action was not permissible under ERISA. *Id.*

Nor does *Harris Trust* overrule our Circuit precedent. *Harris Trust* involved the question of whether § 1132(a)(3) allowed "a suit against a nonfiduciary 'party in interest' to a transaction barred by § 406(a)." 530 U.S. at 241, 120 S.Ct. 2180. The Court held that it did. *Id.* In doing so, the Court referenced "the analogous situation of property obtained by fraud." *Id.* at 250, 120 S.Ct. 2180. As the Court observed:

> It also bears emphasis that the common law of trusts sets limits on restitution actions against defendants other than the principal "wrongdoer." Only a transferee of ill-gotten trust assets may be held liable, and then only when the transferee (assuming he has purchased for value) knew or should have known of the existence of the trust and the circumstances that rendered the transfer in breach of the trust.

*Id.* at 251, 120 S.Ct. 2180.

The Court concluded that "an action for restitution against a transferee of tainted plan assets satisfies the 'appropriateness' criterion" under § 1132(a)(3), noting that *Mertens* had previously indicated that "the 'equitable relief' awardable under

§ 502(a)(5) includes restitution of ill-gotten plan assets or profits." *Id.* at 253, 113 S.Ct. 2063.

In sum, neither *Harris Trust* nor *Great–West Life* overruled our circuit precedent. Indeed, *Great–West Life* was a case affirming our circuit and referenced one of the cases that the Trust claims it overruled.

The actions asserted by the Trust are nothing more than garden-variety legal claims for contractual restitution that are not cognizable under ERISA. Thus, the district court was entirely correct in its dismissal of the Trust's ERISA claims.

## IV

■ The district court dismissed the Trust's state law claims "as completely preempted by ERISA" because the "state claims asserted related directly to the administration of an ERISA plan and thus fall within the preemption provision." As we have noted repeatedly, "ERISA contains one of the broadest preemption clauses ever enacted by Congress." *PM Group Life Ins. v. Western Growers Assur. Trust,* 953 F.2d 543, 545 (9th Cir.1992) (quotation omitted). However, we have recently held that some common law claims for reimbursement may survive ERISA's preemptive force. *Providence Health Plan v. McDowell,* 361 F.3d 1243 (9th Cir.2004). Because the district court did not have the benefit of *Providence Health Plan* when it considered the state law claims at issue in this case, we remand for the district court's reconsideration of the state law claims in light of *Providence Health Plan.* In doing so, we express no opinion on the merits of the question.

## V

■ In ERISA cases, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). As we

noted in *Smith v. CMTA–IAM Pension Trust,* 746 F.2d 587 (9th Cir.1984),"[t]his section should be read broadly to mean that a plan participant or beneficiary, if he prevails in his suit under § 1132 to enforce his rights under his plan, should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Id.* at 589. Although it was certainly proper for the district court to employ a *Hummell* analysis, *see Westaff,* 298 F.3d at 1167, the court paid little heed to the principles underlying the "special circumstances" doctrine. *See Nelson v. EG & G Energy Measurements Grp., Inc.,* 37 F.3d 1384, 1392 (9th Cir.1994); *McConnell v. MEBA Medical & Benefits Plan,* 778 F.2d 521, 525–26 (9th Cir.1985). The ERISA plan beneficiaries were merely attempting to secure and enforce their plan's medical benefit unencumbered by the extra-statutory conditions of the reimbursement provisions; the Trust then subjected them to this burdensome litigation. We thus see no "special circumstances" that render the award of attorney fees to the plan beneficiaries in this case "unjust." Consequently, we reverse the district court's order denying attorneys' fees and remand in order for the district court to determine the appropriate fees to be awarded once all claims are determined.

## VI

We affirm the district court's dismissal of the Trust's federal claims and remand for reconsideration of the Trust's state claims. We reverse the district court's denial of attorneys' fees and remand the question of the appropriate sum of those fees to be determined by the district court.

**AFFIRMED IN PART; VACATED AND REMANDED IN PART.**