**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

TOMMY DOWDY and SHARON MORRIS-DOWDY,
*Plaintiffs-Appellants*,

v.

METROPOLITAN LIFE INSURANCE COMPANY,
*Defendant-Appellee.*

No. 16-15824

D.C. No.
3:15-cv-03764-JST

OPINION

Appeal from the United States District Court
for the Northern District of California
Jon S. Tigar, District Judge, Presiding

Argued and Submitted November 15, 2017
San Francisco, California

Filed May 16, 2018

Before: Marsha S. Berzon and Michelle T. Friedland,
Circuit Judges, and William K. Sessions,[*] District Judge.

Opinion by Judge Sessions

---

[*] The Honorable William K. Sessions III, United States District Judge for the District of Vermont, sitting by designation.

## SUMMARY[**]

### Employee Retirement Income Security Act

The panel reversed the district court's judgment in favor of the defendant in an ERISA action challenging the denial of accidental dismemberment benefits under an employee welfare benefit plan.

The plaintiff suffered a serious injury to his left leg as the result of an automobile accident, and his leg was eventually amputated below the knee. The defendant denied coverage because the plaintiff's injury was complicated by his diabetes.

The panel held that the district court did not abuse its discretion in excluding evidence outside the administrative record, and any error on this issue was harmless because the external evidence did not support the plaintiff's claim.

Under the ERISA plan, the plaintiff was entitled to coverage if his car accident was the "direct and sole cause" of the loss, and if amputation "was a direct result of the accidental injury, independent of other causes." The panel held that, even under the more demanding "substantial contribution" standard used when the applicable plan language is conspicuous, the plaintiff was entitled to recovery because the record did not support a finding that the pre-existing condition of diabetes *substantially* contributed to his loss.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel remanded the case to the district court for further proceedings.

## COUNSEL

Mark L. Mosley (argued) and Douglas A. Applegate, Seiler Epstein Ziegler & Applegate LLP, San Francisco, California; Glenn R. Kantor, Kantor & Kantor LLP, Northridge, California; for Plaintiffs-Appellants.

Rebecca Hull (argued) and Denise Trani-Morris, Gordon Rees Scully MansukhaniLLP, San Francisco, California; Ian S. Linker, Metropolitan Life Insurance Company, New York, New York; for Defendant-Appellee.

## OPINION

SESSIONS, District Judge:

### OVERVIEW

In 2014, Appellant Tommy Dowdy suffered a serious injury to his left leg as the result of an automobile accident. His leg was eventually amputated below the knee. Mr. Dowdy and his wife, Sharon Morris-Dowdy, sought accidental dismemberment benefits under an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). Appellee Metropolitan Life Insurance Company ("MetLife") denied coverage because Mr. Dowdy's injury was complicated by his diabetes, and the district court affirmed the denial. For the reasons set forth below, we hold that the Dowdys are

entitled to coverage because Mr. Dowdy's diabetes did not substantially cause or contribute to his injury. The judgment of the district court is therefore **reversed** and this case is **remanded** for further proceedings.

## FACTUAL BACKGROUND

On the morning of September 13, 2014, Mr. Dowdy, age 60, was driving eastbound on California State Route 4 when he lost control of his car. The vehicle struck a metal sign post, rolled onto its right side, traveled down a dirt embankment and spun clockwise before coming to rest. The California Highway Patrol ("CHP") officer who arrived at the scene noted that Mr. Dowdy had suffered serious injuries, including a "semi-amputated left ankle" and chest abrasions. After a "prolonged" extraction from his vehicle, Mr. Dowdy was transported by helicopter to the John Muir Medical Center and treated in the Intensive Care Unit.

Mr. Dowdy remained in the hospital until October 11, 2014, at which time he was discharged to a skilled nursing facility. When discharged, he was "nonweightbearing" due to his leg injury. The injury failed to improve, and approximately three months later Mr. Dowdy was transferred back to the hospital for treatment of persistent infection issues. On February 13, 2015, Dr. Christopher Coufal amputated Mr. Dowdy's left leg below the knee.

Through Mr. Dowdy's wife's employment at Bank of the West, the Dowdys had purchased accidental death and dismemberment insurance from MetLife ("the AD&D Plan" or "Plan"). The Plan is governed by ERISA. The relevant coverage language states:

> If You or a Dependent sustain an accidental injury that is the Direct and Sole Cause of a Covered Loss described in the SCHEDULE OF BENEFITS, Proof of the accidental injury and Covered Loss must be sent to Us. When We receive such Proof We will review the claim and, if We approve it, will pay the insurance in effect on the date of the injury.

> Direct and Sole Cause means that the Covered Loss occurs within 12 months of the date of the accidental injury and was a direct result of the accidental injury, independent of other causes

(the "Coverage Provision").

The Plan has several exclusions, one of which provides that MetLife will not issue benefits "for any loss caused or contributed to by . . . physical . . . illness or infirmity, or the diagnosis or treatment of such illness or infirmity" (the "Illness or Infirmity Exclusion"). The Plan also excludes coverage for infections (the "Infection Exclusion"), but carves out of the exclusion any "infection occurring in an external accidental wound." The Plan requires claimants to submit written evidence in support of their claim.

The Dowdys filed a request for benefits under the AD&D Plan for Mr. Dowdy's leg amputation, submitting information both in writing and through several telephone calls. Prior to the amputation, however, MetLife informed Ms. Morris-Dowdy that it intended to deny the dismemberment claim because an ankle fracture was not a severance. Ms. Morris-

Dowdy informed MetLife that amputation was possible within the next week.

One week later, on February 16, 2015, MetLife mailed a letter denying coverage. The letter stated that "[i]n general, dismemberment benefits are paid for severing injuries, which did not happen here." On March 5, 2015, Dr. Coufal wrote in a letter that Mr. Dowdy had

> sustained significant injuries to his left lower extremity with an open grade III B pilon fracture. He had significant multiple other comorbidities and traumatic injuries. . . . He had wound issues, which were complicated by his diabetes. The wound healing as well as his fracture itself was slow to heal and never had any significant healing in spite of being stabilized with the external fixator. He ended up developing deep infection . . . consistent with osteomyelitis and sequestrum, which was related to original injury. Eventually, due to his comorbidities as well as type of injury he ended up proceeding to an amputation. On 2/13/15, he underwent elective left below-the-knee amputation for treatment of this infected nonunion of the left pilon fracture.

Dr. Coufal's surgical report similarly stated that "[o]ver the past several months, [Mr. Dowdy] has had very poor signs of healing . . . . Attempts at soft tissue coverage have been unsuccessful. Due to his multiple comorbidities as well as nonhealing wounds to his left leg and osteomyelitis, it was elected to undergo a left below-the-knee amputation."

On March 24, 2015, a senior claims examiner at MetLife called for a "new initial denial as now there is now an amputation, however the loss was contributed to by the diabetes." Correspondingly, MetLife sent a second denial letter dated April 2, 2015. The letter cited the Illness or Infirmity Exclusion, quoted above, which pertained to "any loss caused or contributed to by . . . physical or mental illness or infirmity, or the diagnosis or treatment of such illness or infirmity." The letter stated that Mr. Dowdy's "amputation was contributed [to] and complicated by diabetes per Dr. Coufal," and that "[u]nder the terms of the Plan a loss caused or contributed [to] by an illness or treatment for that illness is excluded by the Plan from payment."

The Dowdys filed an administrative appeal of MetLife's initial determination. After a further review, MetLife upheld its initial determination, concluding that the accident was not the "direct and sole cause" of the amputation "independent of other causes" as set forth in the Coverage Provision, and that the Plan's Illness or Infirmity Exclusion applied because Mr. Dowdy's diabetes contributed to the loss. As authorized by ERISA, the Dowdys then sought judicial review in federal court. *See* 29 U.S.C. § 1132(a)(1)(B).

In the proceedings before the district court, the parties filed cross-motions for judgment under Federal Rule of Civil Procedure 52. The district court declined to consider extrinsic evidence, citing the principle that review of an ERISA claim is generally limited to the administrative record. The court also found that a review of extrinsic materials was not warranted because the burden was on the Dowdys to provide evidence supporting their claim, and MetLife had not acted in bad faith in its communications with Ms. Morris-Dowdy. With respect to the merits of Mr. Dowdy's claim,

the district court found that diabetes caused or contributed to the need for amputation, and affirmed the denial of benefits. This appeal followed.

## STANDARDS OF REVIEW

We review findings of fact by the district court for clear error. *Silver v. Exec. Car Leasing Long-Term Disability Plan*, 466 F.3d 727, 733 (9th Cir. 2006). When reviewing a mixed question of law and fact, we review for clear error "[i]f application of the rule of law to the facts requires an inquiry that is 'essentially factual.'" *United States v. McConney*, 728 F.2d 1195, 1202 (9th Cir. 1984) (en banc) (quoting *Pullman-Standard v. Swint*, 456 U.S. 273, 288 (1982)). The district court's decision to exclude evidence outside the administrative record is reviewed for an abuse of discretion. *Opeta v. Nw. Airlines Pension Plan for Contract Emps.*, 484 F.3d 1211, 1216 (9th Cir. 2007).

## DISCUSSION

## I.  Extrinsic Evidence

The Court must first consider whether it is limited to reviewing the administrative record. Review of a benefits denial is generally limited to the factual record presented to the plan administrator. *Id.* at 1217. This Circuit has held that a court may consider evidence beyond the administrative record "only when circumstances clearly establish that additional evidence is necessary to conduct an adequate *de novo* review of the benefit decision." *Mongeluzo v. Baxter Travenol Long Term Disability Benefits Plan*, 46 F.3d 938, 944 (9th Cir. 1995) (quoting *Quesinberry v. Life. Ins. Co. of N. Am.*, 987 F.2d 1017, 1025 (4th Cir. 1993)) (describing

circumstances that support considering evidence outside of the administrative record).

Of the four pieces of evidence excluded by the district court, only one—Mr. Dowdy's medical chart—is relevant. The remaining evidence, which includes MetLife marketing materials, a declaration from Ms. Morris-Dowdy stating when Mr. Dowdy returned home, and evidence showing that Ms. Morris-Dowdy was forced to leave her job to manage Mr. Dowdy's medical care, is irrelevant to the issues on appeal. And with respect to the medical chart, the district court correctly concluded that it did not in fact support the Dowdys' claim. Accordingly, even assuming the district court erred in refusing to look beyond the administrative record, any such error was harmless. *See Burgess v. Premier Corp.*, 727 F.2d 826, 833 (9th Cir. 1984) ("On appeal, a ruling which admits or excludes evidence, even if an abuse of discretion, will not be overturned if the error is harmless.").

## II.  Entitlement to Coverage

We next turn to the question whether the Dowdys are entitled to coverage. When making such a determination under ERISA, the Court has generally applied federal common law to questions of insurance policy interpretation. *Padfield v. AIG Life Ins. Co.*, 290 F.3d 1121, 1125 (9th Cir. 2002); *see also Evans v. Safeco Life Ins.* Co., 916 F.2d 1437, 1439 (9th Cir. 1990). Courts may "borrow 'from state law where appropriate, and be guided by the policies expressed in ERISA and other federal labor laws.'" *Babikian v. Paul Revere Life Ins. Co.*, 63 F.3d 837, 840 (9th Cir. 1995) (alteration omitted) (quoting *Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1502 (9th Cir. 1985)). However, the general rule is that state common-law rules related to employee benefit plans are

preempted.  29 U.S.C. § 1144(a); *Evans*, 916 F.2d at 1439; *see also Shaw v. Delta Air Lines, Inc*., 463 U.S. 85, 98 (1983) (holding that federal common law of ERISA preempts state law in the interpretation of ERISA benefit plans).[1]

In developing federal common law, courts must adopt a rule that "best comports with the interests served by ERISA's regulatory scheme." *PM Grp. Life Ins. Co. v. W. Growers Assurance Tr.*, 953 F.2d 543, 546 (9th Cir. 1992).  Congress specifically stated that it is "the policy of [ERISA] to protect . . . the interests of participants in employee benefit plans and their beneficiaries" and to "increase the likelihood that participants and beneficiaries . . . receive their full benefits." 29 U.S.C. §§ 1001(b), 1001b(c)(3).

---

[1] ERISA contains a savings clause that exempts from preemption "any law of any State which regulates insurance."  29 U.S.C. § 1144(b)(2)(A). We have previously held that "state laws of insurance policy interpretation do not qualify for the savings clause exception and are preempted." *McClure v. Life Ins. Co. of N. Am.*, 84 F.3d 1129, 1133 (9th Cir. 1996) (quoting *Evans*, 916 F.2d at 1440 (1990)); *see also Williams v. Nat'l Union Fire Ins. Co.*, 792 F.3d 1136, 1140 (9th Cir. 2015).  Whether, in light of *Kentucky Association of Health Plans, Inc. v. Miller*, 538 U.S. 329 (2003), the *McClure* rule still applies to the state insurance law here at issue, *see* Cal. Ins. Code §§ 530, 532; *Garvey v. State Farm Fire & Cas. Co.*, 770 P.2d 704, 706–07 (Cal. 1989), is a question we need not address. *Cf. Anderson v. Continental Cas. Co.*, 258 F. Supp. 2d 1127, 1130–32 (E.D. Cal. 2003) (concluding that, following *Miller*, California's process-of-nature rule is saved from preemption even though it can be described as a rule of policy interpretation).  No savings clause argument was raised in the district court, and, in any event, the result in this case would be the same under California's less restrictive approach to causation. *See* Cal. Ins. Code. §§ 530, 532; *Garvey*, 770 P.2d at 706–07.

### A.  The "Direct and Sole Cause" of the Injury

In this case, the Dowdys are entitled to coverage if Mr. Dowdy's car accident was the "direct and sole cause" of the loss, and if amputation "was a direct result of the accidental injury, independent of other causes."  These are common terms in ERISA policies.  We have previously addressed similar language in the context of pre-existing conditions in disability insurance.

In *McClure v. Life Ins. Co. of N. Am.*, 84 F.3d 1129 (9th Cir. 1996), we determined that where the applicable plan language is less than obvious ("inconspicuous"), the "policy holder reasonably would expect coverage if the accident were the predominant or proximate cause of the disability."  *Id.* at 1135–36.   If, however, the applicable language is conspicuous, recovery could be barred if a preexisting condition substantially contributed to the loss, "even though the claimed injury was the predominant or proximate cause of the disability."  *Id.* at 1136.

Here, we need not determine whether the applicable policy language is conspicuous or inconspicuous, because even under the more demanding substantial contribution standard, the Dowdys are entitled to recovery.  In affirming the plan administrator's denial of coverage, the district court concluded that diabetes "caused or contributed to the need for amputation."  We agree that the record establishes that diabetes was a factor in the injury.  Nonetheless, the factual record does not support a finding that diabetes *substantially* contributed to Mr. Dowdy's loss.

In order to be considered a substantial contributing factor for the purpose of a provision restricting coverage to "direct

and sole causes" of injury, a pre-existing condition must be more than merely *a* contributing factor.  For example, in *Adkins v. Reliance Standard Life Ins. Co.*, 917 F.2d 794 (4th Cir. 1990), the Fourth Circuit cited with approval the reasoning that "a 'pre-disposition' or 'susceptibility' to injury, whether it results from congenital weakness or from previous illness or injury, does not necessarily amount to a substantial contributing cause.  A mere 'relationship' of undetermined degree is not enough."   917 F.2d at 797 (quoting *Colonial Life & Accident Ins. Co. v. Weartz*, 636 S.W.2d 891, 894 (Ky. Ct. App. 1982), *overruled on other grounds by Mifflin v. Mifflin*, 170 S.W.3d 387 (Ky. 2005)); *see also Quesinberry*, 987 F.2d at 1028 (holding that "a mere relationship of undetermined degree" was not sufficient to defeat coverage).

This conclusion is echoed in the Restatement, to which this Court has previously turned for assistance in formulating federal common law in the ERISA context.  *See, e.g.*, *Salyers v. Metro. Life Ins. Co.*, 871 F.3d 934, 939–40 (9th Cir. 2017) (adopting a definition from the Restatement of Agency as federal common law in an ERISA action); *Native Vill. of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849, 855 (9th Cir. 2012) (defining a public nuisance under federal common law in accordance with the Restatement (Second) of Torts).  In defining "substantial" in the context of "substantial cause," the Restatement (Second) of Torts notes:

> The word "substantial" is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility, rather

than in the so-called "philosophic sense," which includes every one of the great number of events without which any happening would not have occurred.  Each of these events is a cause in the so-called "philosophic sense," yet the effect of many of them is so insignificant that no ordinary mind would think of them as causes.

Restatement (Second) of Torts § 431 cmt. a (Am. Law Inst. 1965).

For a court to distinguish between a responsible cause and a "philosophic," insignificant cause, there must be some evidence of a significant magnitude of causation.  Such evidence need not be presented with mathematical precision, but must nonetheless demonstrate that a causal or contributing factor was more than merely related to the injury, and was instead a substantial catalyst. *See, e.g.*, *Coleman v. Metro. Life Ins. Co.*, 262 F. Supp. 3d 295, 312 (E.D.N.C. 2017) (finding against a defendant in an ERISA case where "the record contains no indication that [the plaintiff's] cancer contributed to his death in any quantifiable or substantial way"); *Towers ex rel. Verderosa v. Life Ins. Co. of N. Am.*, No. 6:09-CV-1318-ORL-28, 2011 WL 3752734, at *6 (M.D. Fla. Aug. 25, 2011) (ruling against defendant under ERISA plan where "the level of contribution of [plaintiff's] preexisting conditions to his death has not been quantified . . . [Thus,] the Court cannot discern from the record evidence any means of determining the degree of the causal relationship.").

The record here falls short of showing that diabetes was a substantial contributing factor.  Dr. Coufal opined that Mr.

Dowdy's "wound issues" post-surgery were "complicated by his diabetes." He did not elaborate, even generally, on how much of a role that complicating factor played in Mr. Dowdy's failure to recover. Dr. Coufal identified a host of contributors, including the original, "significant . . . pilon facture," "potential bony sequestrum indicating osteomyelitis" related to the initial injury, and a resulting "deep infection." In summarizing the grounds for surgery, Dr. Coufal faulted both "comorbidities" and the "type of injury."

The district court concluded that coverage is barred because, as the Plan "dictates," no physical or mental illness can "'cause or contribute'" to the loss, and "Mr. Dowdy's diabetes clearly contributed to his loss." The court also found "that the complications of Mr. Dowdy's diabetes substantially contributed to the need for amputation." Although the district court cited the substantial contribution standard, its application of that standard was clear error, as it was overly strict and not consistent with the requirement that the contributing factor be, in fact, substantial.

In sum, Congress intended for ERISA to protect the interests of plan participants and their beneficiaries. *See* 29 U.S.C. §§ 1001(b), 1001b(c)(3). Consistent with that policy choice, federal courts have developed a body of common law that construes coverage provisions in a manner that does not "unreasonably limit[] coverage." *Dixon*, 389 F.3d at 1184. Here, even assuming the policy language was conspicuous, we construe the Plan as providing coverage unless Mr. Dowdy's pre-existing disease "substantially contributed" to his injury. *McClure*, 84 F.3d at 1136. Based upon the evidence presented in the administrative record, Mr. Dowdy's diabetes was a complicating factor, but it was not

identified as a substantial contributor to the ultimate loss. We therefore hold that coverage should not have been denied on the basis of the Coverage Provision.

## B. The Illness or Infirmity Exclusion

Because Mr. Dowdy's injury is a covered loss, we must go on to determine whether the Illness or Infirmity Exclusion bars coverage. That Exclusion states that MetLife will not pay benefits for "any loss caused or contributed to by . . . illness or infirmity." The plan administrator and the district court both found that this Exclusion applies because Mr. Dowdy's diabetes "caused or contributed to" the loss. We disagree.

Under general principles of insurance law, exclusions are construed narrowly. *See Critchlow v. First Unum Life Ins. Co. of Am.*, 378 F.3d 246, 256 (2d Cir. 2004) (explaining that, under ERISA, exclusionary clauses "are given strict construction" and "should be read narrowly rather than expansively"). And MetLife has conceded, as it must, that it has the burden of showing an exclusion applies. *See Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 765 (2d Cir. 2002) ("[A]s a matter of general insurance law, the insured has the burden of proving that a benefit is covered, while the insurer has the burden of proving that an exclusion applies.").

We hold, for the same reasons discussed above, that the substantial contribution standard applies in interpreting the concepts of cause and contribution in this exclusion. The Illness or Infirmity Exclusion serves the same purpose as the threshold limitation on coverage to accidental injury that is

the "direct and sole cause" of a covered loss.[2] Accordingly, to satisfy the Exclusion, any cause or contribution by an illness or infirmity must be substantial. *See, e.g.*, *Coleman*, 262 F. Supp. 3d at 308 ("The *Adkins* standard governs even where, as here, the causation-based exclusion simply says 'caused or contributed to,' and it requires that any contribution be substantial.").

Again, the record with respect to the role of diabetes in Mr. Dowdy's recovery is notably thin. The car accident resulted in a severe injury that came close to amputating his lower leg. Dr. Coufal opined that when attempts were made properly to correct the lower leg, subsequent wound issues were complicated by diabetes, and the fracture itself was slow to heal. Ultimately, however, Mr. Dowdy suffered a deep infection that Dr. Coufal considered "related to the original injury." In light of this evidence, and giving the Exclusion the required strict reading, MetLife cannot meet its burden of showing that diabetes substantially caused or contributed to the loss.

As the evidence is insufficient for MetLife to show that the Illness or Infirmity Exclusion applies, the Dowdys are entitled to benefits. This case is hereby remanded to the district court for further proceedings consistent with this

---

[2] *See* J.A. Bock, *Pre-existing physical condition as affecting liability under accident policy or accident feature of life policy*, 84 A.L.R. 2d 176, § 4(a) ("[M]ost accident policies contain clauses which may be classified as being either 'sole cause' or 'exclusionary' clauses. By way of general observation, it may be stated that most cases have not recognized any distinction between these two main types of provisions, but rather, depending upon the facts of the particular case, have given the same construction and effect to each type of clause.").

decision, which will include determining the amount of benefits owed.

**REVERSED** and **REMANDED.**